IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KARLEE JOHNSON,

      Plaintiff,

v.                                                    CASE NO. 3:17-cv-528-MCR-GRJ

WESAM FARAJ, et al.,

      Defendants.

_____/

## **REPORT AND RECOMMENDATION**

Pending before the Court is ECF No. 31, Plaintiff's unopposed Motion for Summary Judgment. For the reasons discussed below Plaintiff's motion for summary judgment is due to be granted in part and due to be denied in part.

## I.    Background

Plaintiff brings this lawsuit against Wesam Faraj individually and Bobba Ibrahim LLC d/b/a Mr. Sharks Eats and Treats for violations of the minimum wage provision of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 206, the Florida Minimum Wage Act (FMWA), Fla. Stat. § 448.110, and Art. X, § 24, of the Florida Constitution (Count One); and

retaliation in violation of FLSA § 215, the FMWA and Art. X, § 24, of the Florida Constitution (Count Two). ECF No. 8.

Bobba Ibrahim LLC owns and operates Mr. Sharks Eats and Treats ("Mr. Sharks"), a Pensacola-based restaurant. ECF No. 11 at ¶ 16. Faraj is the managing member of Bobba Ibrahim LLC. *Id.* at ¶ 14.

After filing an answer on behalf of the defendants, ECF No. 11, defense counsel moved to withdraw. ECF No. 15. By order entered on October 26, 2017, the district judge permitted defense counsel to withdraw and gave Defendants thirty days to retain substitute counsel. ECF No. 16. The district judge advised the defendants that should counsel fail to appear on behalf of Faraj within the allotted time, the Court will assume Faraj has elected to proceed *pro se*. *Id.* at 2. However, because a corporation cannot appear *pro se*, the district judge advised that should counsel fail to appear on behalf of Defendant Bobba Ibrahim LLC within the allotted time, the Court will enter default against it. *Id.*

Plaintiff filed a motion to compel and for monetary sanctions against Defendants and moved for entry of default against Bobba Ibrahim LLC because Bobba Ibrahim LLC failed to retain counsel and neither defendant responded to Plaintiff's discovery requests. ECF No. 18. The district judge directed the clerk to enter a default against Bobba Ibrahim LLC for failing to

retain counsel. ECF Nos. 24 and 25. After Faraj failed to respond to the undersigned's order compelling him to respond to Plaintiff's discovery requests and request for attorney's fees, the undersigned ordered Faraj to pay Plaintiff attorney's fees in the amount of $1,125.00. ECF No. 27.

Plaintiff's counsel attempted to schedule mediation with Faraj, but Plaintiff represents that Faraj did not respond to counsel's emails or telephone calls. ECF No. 29 at 2. Faraj also did not respond to the undersigned's order directing the parties to inform the court whether they intend to move for summary judgment.

Despite being sanctioned, Faraj has failed to respond to the Court's orders or participate in this litigation since the withdrawal of counsel on October 25, 2017. He has failed to update his current mailing address, as indicated by the fact that the Court's correspondence to Faraj since December 2017 has been returned to sender. *See* ECF Nos. 22, 26, 32, 33.

Plaintiff filed the pending Motion for Sanctions Pursuant to Rule 37(b), seeking sanctions against Faraj, attorneys' fees and costs, and an entry of default. ECF No. 30. Thereafter, Plaintiff filed the pending Motion for Summary Judgment, arguing the undisputed evidence establishes that: (1) Plaintiff qualifies for individual and enterprise coverage under the FLSA

and FMWA; (2) Faraj is jointly and severally liable for violations of the FLSA and FMWA; and (3) Faraj retaliated against Plaintiff in violation of the FLSA and FMWA. ECF No. 31.

Plaintiff seeks unpaid minimum wage damages in the amount of $888.76 as well as $888.76 in liquidated damages; lost wages resulting from her unlawful termination in the amount of $8,162.65 plus liquidated damages in the amount of $8,162.65; and attorney's fees and costs in an amount to be determined by the Court. *Id.* at 19, 24.

In support of her Motion for Summary Judgment, Plaintiff submitted the following[1]: (1) Plaintiff's Declaration, ECF No. 31-1; (2) Plaintiff's personal record of hours she worked and tips she received while employed by Mr. Sharks from April 23, 2017, through July 9, 2017, ECF No. 31-2; (3) Plaintiff's Wells Fargo account transaction history reflecting payroll deposits from Bobba Ibrahim LLC, ECF No. 31-3; (4) Composite Payroll and Time Records compiled by Plaintiff, ECF No. 31-4; (5) a copy of the work schedule at Mr. Sharks from June 19 through July 9, 2017, ECF No. 31-5;

---

[1] Plaintiff maintains that her ability to prosecute this action has been prejudiced by Faraj's non-compliance with discovery in that Plaintiff was unable to obtain through discovery Faraj's business payroll records, time-keeping records, and records of tips Plaintiff received while working for Faraj. ECF No. 30 at 4.

(6) a Notice to Employees regarding minimum wage rates in Florida, ECF No. 31-6; (7) Florida Minimum Wage History 2000 to 2018, ECF No. 31-7.

## II.  Plaintiff's Summary Judgment Evidence

Mr. Sharks is a Pensacola-based restaurant owned and operated by Bobba Ibrahim LLC, a Florida company managed by Faraj. ECF No. 11 at ¶¶ 14, 16. Plaintiff began working at Mr. Sharks on or about April 23, 2017. *See* Pl.'s Decl., ECF No. 31-1, at ¶ 2.

Plaintiff worked as a delivery driver and server. *Id.* at ¶ 3. She made deliveries, prepared food for delivery, packaged deliveries, took orders, served customers, performed hostess duties, and cleaned the restaurant. *Id.* Plaintiff spent half her time making deliveries and the other half working inside the restaurant serving customers. *Id.* at ¶ 4.

As a delivery driver, Plaintiff answered phones, processed credit cards and used the internet for directions to delivery locations. *Id.* at ¶ 16. Plaintiff often made deliveries to Naval Air Station (NAS) Pensacola and Corey Naval base. *Id.* at ¶ 18.

Plaintiff worked roughly twenty-five hours per week. *Id.* at ¶ 13; *See* ECF No. 31-4.[2] Faraj classified Plaintiff as an independent contractor and

---

[2] Composite Payroll and Time Records compiled by Plaintiff show that Plaintiff worked an average of 23:04:44 hours per week and a median of 24:30:00.

paid her $5.00 per hour. *Id.* at ¶ 5. Plaintiff received tips from deliveries as well as serving patrons inside the restaurant. *Id.* at ¶ 6, 17. When serving, all tips had to be placed in the "tip jar," including tips intended for Plaintiff. *Id.* at ¶ 6. Plaintiff could keep the tips she earned for deliveries, which totaled from $150-$200 per week. *Id.* ¶ 17. However, Faraj kept the tips from the tip jar. *Id.* at ¶ 8.

When Faraj hired Plaintiff, Faraj told her she was an independent contractor. *Id.* at ¶ 9. Faraj made Plaintiff's weekly schedule and instructed her to either serve or do deliveries. *Id.* at ¶ 10; ECF No. 31-5. She was paid by Bobba Ibrahim LLC's payroll. *See* Wells Fargo account transaction history, ECF No. 31-3. Plaintiff created a daily log of her hours and tips for tax purposes, which she attached to the motion. *Id.* at ¶ 11; *See* ECF No. 31-2.

Mr. Shark's made more than $500,000 a year in gross proceeds. *Id.* at ¶ 21. There were many shifts where the restaurant earned $1,000 per day in deliveries alone. *Id.* at ¶ 19. In addition to deliveries, there was a large in-store volume in addition to many banquets and events for Naval Air Station (NAS) Pensacola, Corey Naval Base, and the United Service Organization (USO). *Id.* at ¶ 20.

On or about July 6, 2017, Plaintiff complained to Faraj about being paid less than minimum wage and told Faraj she thought it was illegal. *Id.* at ¶ 22. Faraj then cut Plaintiff's hours in half. *Id.* at ¶ 23; *see* ECF No. 31-4. Plaintiff contacted a lawyer and then told Faraj on July 9, 2017. *See* Pl.'s Decl., ECF No. 31-1, at ¶ 22. Faraj fired Plaintiff and threatened to file criminal theft charges against her, although Plaintiff did not steal anything. *Id.* Aside from temporary employment from August 20[3] through December 12, 2017, Plaintiff has been unable to secure permanent employment. *Id.* at ¶ 24.

## III.    Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988).

---

[3] Plaintiff's lost wages calculation table shows that Plaintiff began temporary work on August 30, 2017. *See* ECF No. 31 at 23.

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

A court has the power to grant an unopposed motion for summary judgment pursuant to its local rules provided that the non-movant is put on notice that failing to respond to the motion could result in the Court granting the motion for summary judgment as unopposed. *See Dunlap v. TransAmerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988). The Eleventh Circuit has ruled that granting summary judgment in such a manner is appropriate "so long as the party against whom judgment will be entered is given sufficient advance notice and has been afforded an adequate opportunity to demonstrate why summary judgment should not

be granted." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1204 (11th Cir. 1999). "[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *See United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004). Even where a summary judgment motion is unopposed, the district court must ensure that the motion is supported by evidentiary materials. *See U.S. v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

## IV.    Discussion

### a. FLSA Coverage

Section 206(a) of the FLSA requires that employers pay employees "engaged in commerce or in the production of goods for commerce, or [] employed in an enterprise engaged in commerce or in the production of goods for commerce" a minimum wage set by statute, which was $7.25 an hour in 2017. *See* 29 U.S.C. § 206(a)(1)(C). To be eligible for the FLSA minimum wage and overtime requirements, however, an employee must first demonstrate that she is "covered" by the FLSA.

The FLSA provides for two forms of coverage, individual coverage and enterprise coverage. Individual coverage is applicable where the employee is directly engaged in commerce or the production of goods for

commerce. Enterprise coverage lies where an employee works for an enterprise engaged in commerce or in the production of goods for commerce.

"An employee is subject to individual coverage if he is directly and regularly 'engaged in' interstate commerce." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (emphasis in original) (citing *Thorne v. All Restoration Servs. Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006)). Thus, an employee must demonstrate that he was "directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne*, 448 F.3d at 1266 (citations omitted).

As to enterprise coverage, an "enterprise engaged in commerce or in the production of goods for commerce" is defined, in relevant part, as an enterprise that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated); [or]

(B) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution....

29 U.S.C. § 203(s)(1). "[A] single employee who is directly engaged in commerce is not enough. Nor is it enough to have two or more employees who only engage in commerce on isolated occasions. The statute requires instead that two or more employees (i) recurrently engage in commerce or the production of goods for commerce, or (ii) recurrently handle materials that previously moved through interstate commerce." *Diaz v. Jaguar Rest. Grp., LLC*, 649 F. Supp. 2d 1343, 1347 (S.D. Fla. 2009), citing 29 C.F.R. § 779.238; *see also Polycarpe v. E & S Landscaping Serv., Inc. (Polycarpe I)*, 616 F.3d 1217, 1220 (11th Cir. 2010). An employee may be subject to either type, or both types, of FLSA coverage. *See Josendis*, 662 F.3d at 1299 (citation omitted).

Plaintiff asserts that the FLSA applies to her under both individual and enterprise coverage. Plaintiff's sole argument supporting her coverage under the FLSA is as follows:

In the present case, Johnson is covered by the FLSA by both individual and enterprise coverage. The restaurant earned over $500,000.00 per year. *See* Johnson Declaration Ex 1 § 21, 19, 20. Further, as part of her job, Johnson was required to use the

instrumentalities of interstate commerce. Johnson had to answer phones, process credit cards, make deliveries, use the internet for directions to make deliveries. *See* Johnson Declaration Ex 1 § 16.[4]

ECF No. 31 at 7.

Plaintiff's argument, and evidence in support of her argument, however, do not establish that she is covered under the FLSA. Numerous courts have held that processing credit cards, without more, is insufficient to constitute individual coverage, even at the pleading stage. *Perez v. Nwb Aspen, Inc.*, No. 6:16-CV-412-ORL-41DAB, 2016 WL 5853734, at *3 (M.D. Fla. June 6, 2016), *report and recommendation adopted*, No. 6:16-CV-412-ORL-41DAB, 2016 WL 5815903 (M.D. Fla. Oct. 5, 2016). The *Perez* court noted that courts in the Southern District of Florida have declined to extend individual coverage based on credit card use alone. *Id.*, citing *Mayo v. Jean Nicole Hair Salons, Inc.*, No. 2:15-CV-115-FTM, 2015 WL 4751202, at *3 (M.D. Fla. Aug. 11, 2015) (holding that "merely using a customer's credit card to ring up the sale does not constitute interstate commerce," particularly where the subject of the transaction was performed locally) (citation omitted); *Schamis v. Josef's Table, LLC*, No. 12-80638-CIV, 2014

---

[4] Plaintiff's Second Amended Complaint asserts that defendant Bobba Ibrahim LLC "was an enterprise engaged in commerce" within the meaning of the FLSA and that Plaintiff is a covered employee under the individual coverage because she and Defendant engaged in interstate commerce through the acceptance of credit card payments." ECF No. 8 at ¶ 17.

WL 1463494, at *4 (S.D. Fla. Apr. 15, 2014) (finding allegations did not demonstrate engagement in commerce based on, inter alia, processing credit card transactions for goods purchased locally); *Marckenson v. LAL Peker, LLC*, No. 1:11-CV-22617-KMM, 2011 WL 5023422, at *4 (S.D. Fla. Oct. 19, 2011) (granting motion to dismiss where the plaintiff "failed to produce any evidence indicating that by merely processing credit cards for goods purchased locally he was engaging in interstate commerce"); *Joseph v. Nichell's Caribbean Cuisine, Inc.*, 862 F. Supp. 2d 1309, 1313 (S.D. Fla. 2012), as amended (July 17, 2012) ("Usage of credit cards is insufficient for purposes of establishing FLSA individual coverage.") (citation omitted); *Attai v. Delivery Dudes, LLC*, No. 15-CV-62522, 2016 WL 828816, at *3 (S.D. Fla. Mar. 3, 2016) ("Courts have repeatedly held that the mere processing of credit cards, without more, is insufficient to constitute individual coverage, even at the pleading stage."); *Martin v. Briceno*, No. 11-23228-CIV, 2014 WL 2587484, at *2-3 (S.D. Fla. June 10, 2014) ("waiters, servers, bartenders, and bus boys are not entitled to individual coverage because their duties involved processing credit card transactions and serving food and beverages").

Similarly, the mere use of a telephone or the Internet does not evidence regular use of the instrumentalities of interstate commerce. *Attai*,

2016 WL 828816, at *3; *cf. Lefevre v. La Cote Basque Winehouse, Inc.*, No. 8:15-CV-1428-T-23TBM, 2015 WL 6704107, at *1 (M.D. Fla. Nov. 3, 2015) ("regular and routine" use of "interstate telephone" to contact out of state customers sufficient to allege individual coverage in motion to dismiss context).

While Plaintiff avers in her declaration that she used instrumentalities of interstate commerce, Plaintiff simply alleges that she used the instrumentalities generally and not in any way that invokes interstate commerce as opposed to providing services of a local nature. Glaringly, absent from Plaintiff's declaration is any statement that she utilized the telephone to communicate with out-of-state customers or that she used the internet to process credit card transactions for any out-of-state customers. In the absence of such allegations Plaintiff's proof demonstrates nothing more than she processed local orders from local patrons, an allegations that is insufficient to demonstrate the required connection to interstate commerce.

Further, Plaintiff's statement that she used the Internet to look up directions for deliveries, is not sufficient to demonstrate the required connection with interstate commerce. In the absence of any suggestion that Plaintiff made deliveries to out-of-state customers, the mere use of the

14

internet for directions to make local deliveries is insufficient to demonstrate the required connection to interstate commerce.  Thus, while the telephone and internet may be used in interstate commerce, Plaintiff has failed to allege or offer proof that she used those instrumentalities in interstate commerce. *See Dent v. Giaimo*, 606 F. Supp. 2d 1357, 1360 (S.D. Fla. 2009) (a plaintiff's use of the telephone or facsimile machines to make long distance phone calls or use of the internet and credit cards is insufficient to establish jurisdiction when instrumentalities were not used specifically to transact business in interstate commerce).

Plaintiff 's reliance upon *Thorne* 448 F.3d 1264, does not support her argument that she is subject individual coverage. In *Thorne*, the Eleventh Circuit held that a Plaintiff who used credit cards to purchase goods which had traveled in interstate commerce for his employer's business was not individually engaged in interstate commerce. *Id.* at 1266. The Eleventh Circuit found that even assuming without deciding that credit card transactions alone could constitute an instrumentality of interstate commerce, Plaintiff did not produce sufficient evidence of interstate activity, *i.e.* he produced no evidence that he corresponded with merchants outside the state of Florida using the mail, phone, or fax, nor did he produce

evidence that he made purchases of goods from out-of-state vendors. *Id.* at 1267.

Plaintiff 's reliance upon *Martinez v. Palace*, 414 F. App'x 243, 245 (11th Cir. 2011) also does not support her position that she is subject to individual coverage.  The Plaintiff in *Martinez*, a cook at a small, locally owned Chinese restaurant, sued for unpaid overtime under the FLSA. The Eleventh Circuit declined to extend FLSA individual coverage to Martinez because he worked for a small, locally-owned Chinese restaurant and not an instrumentality of interstate commerce. Martinez also admitted that he did not use the telephone, Internet or mail as part of his duties or that he was required to travel across state lines or to transport materials that were moved in interstate commerce. *Id.* at 246.

Plaintiff also fails to demonstrate she is entitled to enterprise coverage. To show that Mr. Sharks is an "enterprise engaged in commerce or in the production of goods for commerce" Plaintiff must establish, in addition to the $500,000 annual gross sales volume, that Mr. Sharks: "has employees engaged in commerce or in the production of goods for commerce, or . . .  has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." § 203(s)(1).

Plaintiff contends that Mr. Sharks has "employees engaged in commerce" because Plaintiff, as part of her job, answered phones, processed credit cards, made deliveries, [and] used the internet for directions to make deliveries. ECF No. 31 at 7.

However, as previously discussed, the use of instrumentalities alone does not establish that Plaintiff engaged in interstate commerce. Additionally, Plaintiff provides no evidence that at least two of Mr. Sharks' employees engaged in commerce within the meaning of the statute. Plaintiff's declaration says nothing about the restaurant's other employees or their specific tasks, except that Faraj classified other workers as independent contractors and compelled them to work as servers while refusing them access to tips. *See* Pl.'s Decl., ECF No. 31-1, at ¶ 4.

Accordingly, even assuming for the purposes of summary judgment that Plaintiff has satisfied the $500,000 gross sales volume, Plaintiff

nevertheless fails to establish enterprise coverage under the FLSA.[5] *See Dent*, 606 F. Supp. 2d at 1360 (finding no enterprise coverage where defendant conceded that his business grossed at least $500,000 per year but plaintiff failed to show that defendant had two or more employees regularly and recurrently engaged in commerce, or had two or more employees regularly and recurrently handling, selling, or otherwise working on goods or materials that were moved in or produced for commerce by any person); *Attai*, 2016 WL 828816 at *4 (finding that plaintiff who failed to adequately plead the 'engaged in commerce' requirement based on credit card transactions, telephone, and internet, also failed to plead enterprise coverage).

Finally, although the Court is mindful that Plaintiff was unable to conduct discovery in this case due to the defendants' recalcitrance, Plaintiff was not precluded from demonstrating FLSA coverage. Plaintiff could have

---

[5] While is reasonable to assume that a restaurant grossing more than $500,000 per year engages in interstate commerce, the statute requires that a business meet both prongs of the test, and Plaintiff fails to demonstrate that Mr. Shark's has employees engaged in commerce. Notably, Plaintiff does not assert that Mr. Sharks employees engaged in the production of goods for commerce or that Mr. Sharks has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce. *See McBride v. T&A of Citrus County, Inc.*, No. 5:13-cv-18-OC-22PRL, 2014 WL 12589352 (M.D. Fla. 2014) (finding that issues of fact precluded summary judgment on the issue of enterprise coverage where Plaintiff stated in her declaration that she and the restaurant's other employees regularly handled goods and materials, such as beer, wine, sangria, and olive oil, that were manufactured outside of Florida, and even outside of the United States).

(but did not) offer any information in her declaration regarding the activities of other employees or facts establishing that Mr. Sharks engaged in interstate commerce. Although Defendant never filed any opposition to Plaintiff's motion for summary judgment the question of FLSA coverage implicates both the Court's jurisdiction and the merits of the case. *Vignoli v. Clifton Apartments, Inc.,* 930 F. Supp. 2d 1342, 1345 (S.D. Fla. 2013). Accordingly, because Plaintiff has failed to establish either FLSA individual or enterprise coverage Plaintiff's request for entry of summary judgment on Plaintiff's claim that Defendant violated the minimum wage provisions of the FLSA is due to be denied.

### b. FLSA Retaliation Claim

All is not lost, however, for Plaintiff. Despite Plaintiff's failure to establish that Defendant violated the wage and hour provisions of the FLSA, Plaintiff is not precluded from bringing her claim for retaliation under the FLSA. This is because the FLSA's prohibition on retaliation is broader than its coverage of minimum wage or overtime wage violations, and applies even if the employee cannot show "individual coverage" or "enterprise coverage." *See Wirtz v. Ross Packaging Co.*, 367 F.2d 549, 550-51 (5th Cir. 1966) (the "unambiguous language of the statute refutes the district court's view that either the employee or his employer must be

engaged in activities covered by the [FLSA's] wage and hour provisions in order for the strictures against discriminatory discharge to be invoked."); *Joseph*, 862 F. Supp. 2d at 1314 ("the law in the Eleventh Circuit [based on pre-split Fifth Circuit precedent] is clear that the lack of individual or enterprise coverage for an [FLSA] overtime claim does not defeat a retaliatory discharge claim").

"A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: '(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action.' " *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000). If a plaintiff can successfully make out a *prima facie* FLSA violation, then the burden shifts to the employer to establish that the adverse employment action was taken for a legitimate, non-retaliatory reason. *Id.* at 1343. If the employer can establish a legitimate, non-retaliatory reason for the adverse employment action, then the burden shifts back to the plaintiff to show that the employer's reasons for the adverse action are merely pretextual. *Id.* If the plaintiff fails to demonstrate that there is a genuine issue of material fact concerning whether the employer's articulated reasons for the adverse employment action are

pretextual, then the employer is entitled to summary judgment on the retaliation claim.

In demonstrating causation, the plaintiff must prove that the adverse action would not have been taken "but for" the assertion of FLSA rights. *Id.* A plaintiff can satisfy this burden if she can prove a "close temporal proximity" between the time her employer learned about her protected activity and her discharge. *Raspanti v. Four Amigos Travel, Inc.*, 266 F. App'x 820, 823 (11th Cir. 2008) (citations omitted). This standard requires that the actions be "very close." *Id.* (citations omitted). A delay of "three to four month[s]" does not suffice. *Id.* (citations omitted).

Here, Plaintiff avers that she told Faraj on or about July 6, 2017, that she believed her compensation below minimum wage was not legal. *See* Pl.'s Decl., ECF No. 31-1, at ¶ 22. Faraj then cut Plaintiff's hours in half. *Id.* at ¶ 23. Plaintiff then told Faraj on July 9, 2017, that she had contacted a lawyer. *Id.* According to Plaintiff, Faraj fired her that day and threatened to file criminal theft charges against her, even though she did not steal anything. *Id.*

These sworn allegations are more than sufficient to demonstrate that Plaintiff engaged in a protected activity when she complained to Faraj based on her good-faith belief that her compensation was illegal and

informed Faraj that she had contacted a lawyer.[6] Plaintiff suffered an adverse action when Faraj terminated her employment.

There is a causal connection between Plaintiff's assertion of her rights and her termination. The evidence demonstrates that Plaintiff was terminated within three days of first complaining to Faraj about her unlawful compensation. This temporal proximity is sufficiently "very close" to show a causal connection and satisfy Plaintiff's burden of proving but-for causation on summary judgment. Faraj has not come forward with any evidence of intervening acts breaking the causal chain or any evidence demonstrating cause for Plaintiff's termination. Accordingly, Plaintiff is entitled to summary judgment as to Count Two on her claim for retaliation under the FLSA.

### c. State-Law Claims

Plaintiff also brings claims under the FMWA for minimum wage violations and unlawful retaliation. The FMWA "provide[s] measures appropriate for the implementation of s. 24, Art. X of the State Constitution," which guarantees minimum wage. Fla. Stat. § 448.110(2). Notably, however, the FMWA provides that "[o]nly those individuals entitled to

---

[6] The Supreme Court has held § 215(a)(3) protects both oral and written complaints. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011). Here, Plaintiff's complaints were sufficient in both content and context to put Faraj on notice that FLSA protection was being invoked.

receive the federal minimum wage under the federal [FLSA] and its implementing regulations shall be eligible to receive the state minimum wage pursuant to s. 24, Art. X of the State Constitution and this section." § 448.110(3). The FMWA also incorporates the exemptions and restrictions in sections 213 and 214 of the FLSA "as interpreted by applicable federal regulations and implemented by the Secretary of Labor." *Id.*

Thus, the Court's discussion of Plaintiffs' FLSA coverage applies equally to Plaintiff's FMWA claim.[7] Accordingly, although Plaintiff has not established that she is entitled to unpaid minimum wages under the FMWA, she is entitled to damages based on unlawful retaliation.

### d. Damages and Attorney's Fees

Plaintiff seeks damages for lost wages in the amount of $8,162.65 and an equal amount in liquidated damages. ECF No. 31 at 23. Plaintiff was terminated on July 9, 2017, and obtained "temporary" employment from August 30, 2017, through December 12, 2017. *Id.* She alleges she

---

[7] "[T]o prevail on a claim for payment of minimum wages under the FMWA, a plaintiff must first establish the same three elements required under the FLSA: that the plaintiff was employed by an employer covered by the FLSA during the time period involved; that the plaintiff was engaged in commerce or production of goods for commerce or employed by an enterprise engaged in commerce or in the production of goods for commerce; and that the employer failed to pay the plaintiff the minimum wage and overtime compensation required by law." *Hanna v. CFL Pizza, LLC*, No. 6:11-CV-1837-ORL-22, 2012 WL 515875, at *3 (M.D. Fla. Jan. 30, 2012), *report and recommendation adopted*, No. 6:11-CV-1837-ORL-22, 2012 WL 513017 (M.D. Fla. Feb. 16, 2012).

has been unable to obtain suitable employment from the date her temporary employment ended through April 16, 2018, the date of the filing of her Motion for Summary Judgment. Accordingly, Plaintiff asserts she is entitled to nine weeks of lost wages in 2017 (07/09/17-08/30/17 and 12/13/17-12/31/17), and fifteen weeks in 2018 (1/1/18-4/16/18).

The $8,162.65 figure is based on Plaintiff's calculation that she worked a median of 24.5 hours per week at Mr. Sharks, that she was entitled to the 2017 Florida minimum wage of $8.10 per hour, and that she received an average of $139.96 per week in tips. *Id.* Adjusting for the change in minimum wage to $8.25 in 2018, Plaintiff's lost-wages calculation comes to $8,162.65. *Id.*

If an employer violates the anti-retaliation provision of the FLSA, the employer " 'shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of [the anti-retaliation provision], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages ...' " *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 931 (11th Cir. 2000) (quoting 29 U.S.C. § 216(b)); *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008) ("Under the FLSA a district court

24

generally must award a plaintiff liquidated damages that are equal in amount to actual damages.").

Here, the Court finds that Plaintiff is entitled to lost wages in the sum of $8,162.65 for unlawful termination. Plaintiff also is entitled to liquidated damages of $8,162.65 for a total sum of $16,325.30.

Plaintiff also is entitled to attorney's fees in an amount to be determined by the Court. FLSA § 216(b) makes fee awards mandatory for prevailing plaintiffs. *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985). Accordingly, counsel for Plaintiff is instructed to file a separate motion for attorney's fees detailing the reasonable hours expended and reasonable hourly rates and any evidence supporting these claims so that the Court can make a determination as to the reasonable attorney's fees to be awarded.

In light of the foregoing, it is respectfully **RECOMMENDED** that

1. Plaintiff's unopposed Motion for Summary Judgment, ECF No. 31, should be **GRANTED IN PART AND DENIED IN PART** as set forth herein; and

2. Judgment in the sum of $16,325.30 should be entered in favor of Plaintiff against Defendants Wesam Faraj and Defendant Bobba Ibrahim LLC, jointly and severally. Plaintiff also should be awarded attorney's fees and costs to be assessed based upon the filing of additional information.[8]

**IN CHAMBERS** at Gainesville, Florida, this 16th day of January 2019.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within** fourteen **(14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.

---

[8] Plaintiff's Motion for Sanctions, ECF No. 30, should be **DENIED as moot**, because even if the Court entered a default against Wesam Faraj for failing to comply with the Court's orders to respond to discovery, Plaintiff would still be required to demonstrate the damages she suffered. The result of such an exercise would be the same as the summary judgment.